■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT MORRIS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Kreindler, J.), rendered November 14, 1980, convicting him of murder in the second degree (felony murder), and robbery in the first degree, upon a jury verdict, and imposing sentence. ¶ Judgment reversed, as a matter of discretion in the interest of justice, and new trial ordered. ¶ The charges against defendant stem from the robbery of Ernest Rice in the hallway of his apartment building on May 4, 1979 and his subsequent death from injuries received at that time. The only evidence which implicated defendant in the crimes was the identification testimony of Rice's neighbor. Her initial inability to remember that defendant, whom she had known for one to three years, was one of the persons she had observed robbing Rice, coupled with her concession that defendant appeared older than any of Rice's assailants, created a very close identification question. This was especially true not only because two defense witnesses testified that the assailants were younger than defendant and defendant was not one of them, but also because at a prior trial resulting in a hung jury Rice's neighbor had testified that upon running down the stairs to Rice's aid, she "went by him and * * * went out the [apartment building] door *to see who it was.* But by the time [she] got outside the door they were gone" (emphasis supplied). ¶ Although a one-witness identification is sufficient to support a judgment of conviction (see *People v Joyiens,* 39 NY2d 197), in this close case, errors committed by the trial court may have tipped the balance against defendant and operated to deprive him of a fair trial. ¶ The trial court erred in permitting the prosecutor to question the defense witnesses regarding their failure to come forward with exculpatory information without laying a proper foundation for that questioning. Contrary to the requirements set forth in *People v Dawson* (50 NY2d 311, 321, n 4), the People failed to establish that these witnesses had a reasonable motive for acting to exonerate defendant, that they were aware of the nature of the charges pending against him, that they had reason to recognize that they possessed exculpatory information, and finally that they were familiar with the means to make such information available to law enforcement authorities. Accordingly, this line of questioning was improper, and no reference to it in the summation should have been made. The trial court should also have instructed the jury that a witness has no civil or moral duty to disclose his testimony to the People and that silence was only relevant with respect to ascertaining the witness' credibility (*People v Dawson, supra,* pp 322-323). ¶ Moreover, in its charge to the jury, the court failed to marshal the evidence on the question of identification. In this close case, it was essential that the jury be advised on how to evaluate the identifying witness' initial inability to identify defendant and how to weigh her identification testimony in light of the testimony of the defense witnesses who also saw the assailants and testified that defendant was not among them (see *People v Rothaar,* 75 AD2d 652; *People v Gardner,* 59 AD2d 913). ¶ Finally, after charging the jury that the People had to prove every element of each crime charged beyond a reasonable doubt, the court went on to state that "there is no

obligation on the part of the prosecutor to establish the elements of the crime * * * beyond all doubt or to a mathematical certainty because you cannot get such a degree of proof in human affairs * * * but *you can get proof to a reasonable certainty and to that degree of proof the People must be held"* (emphasis supplied). Despite the propriety of the initial language of the charge, the use of "reasonable certainty" may have reduced in the jury's mind the quantum of proof constitutionally required to sustain a guilty verdict and affected their deliberations. In this close case, such an error may not be deemed harmless (see *People v Cavallerio,* 71 AD2d 338, 345; *People v Tyler,* 54 AD2d 723). ¶ Although these errors have not been preserved for review, under the circumstances of this case we believe that their cumulative effect was to deprive the defendant of a fair trial and mandates reversal and a new trial in the interest of justice (see *People v Walston,* 99 AD2d 847). We have examined defendant's other contentions and find them to be without merit. O'Connor, J. P., Niehoff and Boyers, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment of conviction, with the following memorandum: Notwithstanding the fact that defendant's trial was not completely error free, I do not concur with my colleagues' conclusion that the interest of justice mandates our overturning the jury's verdict. Viewing the evidence in the light most favorable to the People (see *People v Kennedy,* 47 NY2d 196, 203, mot for rearg dsmd 48 NY2d 635; *People v Benzinger,* 36 NY2d 29, 32), it is clear that defendant's guilt was established beyond a reasonable doubt. The victim's neighbor, who had had an unimpeded opportunity to observe defendant's face when he turned around and looked directly at her during the course of the robbery, unequivocally identified defendant as one of the robbers. Although defendant attempted to undermine the reliability of said testimony by presenting two witnesses who claimed that the actual perpetrators were younger than defendant, the assessment of a witness' credibility is within the province of the trier of fact who had an opportunity to view the witnesses on a firsthand basis (*People v Kennedy, supra,* p 204; *People v De Maio,* 81 AD2d 643). ¶ Moreover, the testimony established that the victim's left ankle had been fractured in the course of this incident. The broken ankle precipitated the development of blood clots in the victim's left leg. These clots broke loose and traveled up the veins into the heart and plugged the arteries to the lungs, eventually resulting in the victim's death some three weeks after the robbery. The jury was thus warranted in concluding that defendant's actions were a direct cause of the victim's death and, on that basis, properly convicted him of felony murder. ¶ With respect to defendant's contentions of prejudicial error, it bears noting that none of his objections has been preserved for appellate review. In the course of cross-examination, the prosecutor asked the defense witnesses, without first demonstrating a good-faith basis, whether or not they had made any pretrial efforts to speak with law enforcement officials regarding this case. The People accurately maintain, however, that at no point did defendant object to the questions posed, seek curative instructions or request that the court hold a Bench conference or limit the cross-examination of the defense witnesses. Although the court afforded defendant an opportunity to submit its requests for particular instructions in writing, defense counsel failed to do so. Accordingly, defendant has failed to preserve this claim for appellate review (*People v Bowen,* 50 NY2d 915, 917; CPL 470.05, subd 2). ¶ Similarly, defendant did not object to the court's charge on reasonable doubt or the court's failure to marshal the evidence on the question of identification. These issues have likewise not been preserved for appellate review (*People v Aleschus,* 55 NY2d 775; CPL 470.05, subd 2). ¶ With respect to the marshaling of evidence, the record reveals that defense counsel unequivocally stated that he was not

requesting a general marshaling of the evidence. On the contrary, counsel stated that he would be satisfied with the court's intended instruction vis-à-vis identification. Thus, defendant should be precluded from asserting this claim on appeal. ¶ Even if these issues were properly presented for our review, it is my view that the charge on reasonable doubt, whereby the court unequivocally apprised the jurors of the People's duty to establish every element of the crime beyond a reasonable doubt, was patently sufficient. While the "reasonable certainty" language, which the court at one point utilized, has been condemned (*People v Cavallerio,* 71 AD2d 338, 345), this brief reference in no way detracts from the clarity of the charge as a whole. Moreover, appellate courts are constrained to determine appeals without regard to technical errors or defects which do not affect the substantial rights of the parties (CPL 470.05, subd 1). In my view, the court's fleeting reference clearly did not impinge upon any substantial rights of this defendant. ¶ In view of what I perceive to be the overwhelming evidence of guilt and the absence of a likelihood that the verdict hinged upon these alleged trial court errors, the interest of justice, as I perceive it, warrants an affirmance of defendant's conviction (*People v Giles,* 87 AD2d 636).